UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KUMAL BURTON,

                Plaintiff,               CIVIL ACTION NO. 09-CV-10893

     vs.

                                DISTRICT JUDGE MARIANNE O. BATTANI

SAVITHRI KAKANI and           MAGISTRATE JUDGE MONA K. MAJZOUB
ANIL PRASAD,

                Defendants.
_____/

REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:** This Court recommends that the Motion for Summary Judgment

filed by Defendants Kakani and Prasad (docket no. 52) be **GRANTED** and Plaintiff's Complaint

be dismissed.

**II.**    **REPORT:**

      This is a *pro se* civil rights action filed by a Michigan state prisoner pursuant to 42 U.S.C.

§ 1983 and state law. Plaintiff was incarcerated at the Gus Harrison Correctional Facility in Adrian,

Michigan during the events giving rise to this lawsuit. Defendants are Physician's Assistant ("PA")

Savithri Kakani and Dr. Anil Prasad. Plaintiff sues Defendants in their individual capacities for

damages and injunctive relief. Presently before the Court is the Motion to Dismiss and/or

Summary Judgment filed by Defendants Kakani and Prasad. (Docket no. 52). Plaintiff has filed a

response. (Docket no. 55). Defendants have filed a reply. (Docket no. 56). This matter has been

1

referred for all pretrial matters. (Docket no. 7). The Court dispenses with oral argument on the motion pursuant to E.D. Mich. LR 7.1(f). Defendants' motion is now ready for ruling.

## A.      Facts and Procedural History

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs by failing to provide any form of treatment for his diagnosed hydrocele condition other than aspirin. He also alleges that Defendants conspired with Correctional Medical Services ("CMS") to provide inadequate medical treatment, and acted with criminal recklessness in failing to take reasonable steps to abate the pain in his testicles. On September 23, 2009, the Court dismissed Plaintiff's conspiracy claim. (Docket no. 22). In addition, the Court found that Plaintiff failed to allege that Defendants were deliberately indifferent to the risk of harm caused by his swollen testicle, but that he had stated a claim that Defendants were deliberately indifferent to his medical needs when they neglected to treat his pain from May 24, 2008 until July 3, 2008. (Docket no. 22 at 7-8).

Plaintiff's medical record reveals that Plaintiff submitted a kite to health care on April 24, 2008 complaining of a painful, swollen right testicle. (Docket no. 54 at 201). On April 26, 2008 a nurse examined Plaintiff and noted that his right testicle was slightly larger than his left testicle. (Docket no. 54 at 198). The nurse referred Plaintiff to the medical service provider and instructed him to take two 325 mg Tylenol tablets every four hours as needed, use cool compresses, and avoid masturbating. (Docket no. 54 at 198).

On April 30, 2008 Defendant Kakani examined Plaintiff and observed that his right testicle was indeed larger than his left, but that there were no signs of epididymitis, redness, or tenderness. (Docket no. 54 at 192). Defendant Kakani assessed Plaintiff with hematuria and ordered a urine cytology examination and kidney-ureter-bladder ("KUB") x-ray to determine the cause of the

2

hematuria.  (Docket no. 54 at 192-93; Docket no. 52, Ex. C at 3).   A declaration submitted by Defendant Kakani states that she believed Plaintiff's hematuria may have been related to his enlarged testicle or to another serious condition such as cancer.  (Docket no. 52, Ex. C at 3). Plaintiff was instructed to take one to two 325 mg tablets of Tylenol as needed for discomfort, decrease the time spent masturbating, and wear loose fitting underwear.  (Docket no. 54 at 196). An x-ray taken on May 1, 2008 revealed a normal KUB with no evidence of mechanical obstruction, gross intraabdominal mass, or free air.  (Docket no. 351).  On May 9, 2008 Defendant Kakani reviewed Plaintiff's urine cytology results and observed that there was no pathology identified. (Docket no. 54 at 181).

On May 12, 2008 Plaintiff was seen by a nurse in health care with complaints that his infection had returned and was causing throbbing pain in his right lower back and side.  (Docket no. 54 at 180).  Plaintiff reported that he worked out in the weight pit the day before, specifically working on his back and arms.  A dip stick urinalysis revealed normal results.  The treatment note states that Plaintiff had Tylenol in his cell and was instructed to lighten up his workout in the weight pit.  (Docket no. 54 at 180).

On May 24, 2008 Plaintiff kited that his right testicle was still painful, particularly when voiding and bending.  (Docket no. 54 at 177).  He was referred to the medical service provider.  On June 3, 2008 Defendant Kakani examined Plaintiff and observed that he had a hard, painful mass in his right and left testicles.  (Docket no. 54 at 171-72).  Defendant Prasad also conducted a physical examination and noted that he felt lumps on Plaintiff's left and right testicles.  (Docket no. 54 at 166).  Defendant Prasad recommended that a specialty consultation request be submitted to CMS for Plaintiff to undergo a testicular ultrasound.  (Docket no. 54 at 166).  Defendant Kakani

submitted the request and contacted the doctor at CMS to discuss Plaintiff's history of Hodgkin's Lymphoma. (Docket no. 54 at 151-52, 162-63, 172). The request was authorized by CMS and an appointment for a bilateral ultrasound of the testicles was scheduled for July 2, 2008. (Docket no. 151-52, 162-63). The ultrasound results reveal that Plaintiff had a moderate to large mildly complex hydrocele on the right testicle and mild enlargement of the right epididymal body and tail. (Docket no. 54 at 349).

Plaintiff presented for a follow-up visit with Defendant Kakani on July 22, 2008 with no new complaints. (Docket no. 54 at 137). Defendant Kakani discussed with Plaintiff the results of his ultrasound which showed that he had a hydrocele on his right testicle and no findings to suggest reoccurrence of any lymphoma. (Docket no. 54 at 137; Docket no. 52, Ex. C at 5). Defendant Kakani's declaration states that hydroceles are typically painless and resolve on their own without treatment. (Docket no. 52, Ex. C at 5). Consequently, once it was determined that Plaintiff had a hydrocele, Defendant Kakani believed that Plaintiff did not require any further treatment. (Docket no. 54, Ex. C at 5-6). Plaintiff was instructed to perform self-examinations and inform health care of any physical findings or changes. (Docket no. 54 at 138). He did not see either Defendant after this date. On September 12, 2008 Plaintiff was transferred from the Gus Harrison Correctional Facility in Adrian, Michigan to the Mound Road Correctional Facility in Detroit, Michigan. (Docket no. 54 at 134).

## B.      Standard

Defendants move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 56. When considering a motion under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pled

factual allegations as true, and determine whether the plaintiff's allegations present plausible claims. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). The Court does not have to accept as true legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987).

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir.2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**C.    Analysis**

1.    Injunctive Relief

Plaintiff is no longer incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan. (Docket no. 46). A transfer to another prison moots a prisoner's request for injunctive relief. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 510 n.1 (6th Cir.2001) (citing *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996)). Thus, Plaintiff's claims against Defendants for injunctive relief should be dismissed.

2.    Eighth Amendment Claim

To prevail on an Eighth Amendment claim based on inadequate medical care, an inmate must

5

show that the defendant was deliberately indifferent to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976) (citation omitted). An Eighth Amendment deliberate indifference claim requires proof of both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he had a serious medical need. A sufficiently serious medical need is one that has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 897 (6th Cir.2004) (citations omitted). To establish the subjective component of an Eighth Amendment claim the plaintiff must prove that the defendant consciously disregarded an excessive or substantial risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. at 837.

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir.1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). "[W]hether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. at 107 (a disagreement between a physician and the prisoner regarding the course of treatment does not state a claim of deliberate indifference).

The Court will accept for purposes of this motion that Plaintiff had a serious medical need. However, Plaintiff has not established that a genuine issue of material fact remains as to whether Defendants knew of and disregarded an excessive risk to Plaintiff's health and safety.

6

As established above, the record shows that Plaintiff received regular and appropriate medical treatment for his condition. Specifically with regard to pain relief, the record demonstrates that Plaintiff was instructed to take Tylenol for pain relief in April 2008 when he was first evaluated for complaints of genital pain. Plaintiff states that he was provided with aspirin until he could purchase Tylenol from the prison commissary. (Docket no. 55 at 4).

In her declaration, Defendant Kakani states that she was aware that Plaintiff complained of pain in his testicles but believed that his pain could be treated with Motrin or Tylenol, and did not believe that Plaintiff required any stronger medication to control his pain. (Docket no. 52, Ex. C at 6). The record does not indicate that Plaintiff complained that Tylenol was not effective in managing his pain. Thus, although the evidence shows that Defendant Kakani knew that Plaintiff was experiencing pain, it does not show that she knew that Tylenol was not an effective pain relief. Likewise, with regard to Defendant Prasad, the record does not show that Plaintiff complained to Defendant Prasad about his pain or that Defendant Prasad was informed that Tylenol was not effective in controlling his pain.

This is not a case where Plaintiff received no treatment at all. Instead, Plaintiff received timely and appropriate medical care and merely disagrees with the Defendants' medical judgment. A disagreement over treatment does not give rise to a constitutional violation. Plaintiff has failed to adduce evidence upon which a reasonable trier of fact could find that Defendants Kakani and Prasad consciously disregarded his needs. There being no genuine issue of material fact on this essential element of Plaintiff's claim, Defendants Kakani and Prasad should be awarded summary judgment.

3.      State Law Claim

Because Plaintiff's federal claims should be dismissed, the Court should decline to address the state law claim that Plaintiff asserts against Defendants Kakani and Prasad. 28 U.S.C. § 1367(c) (district courts may decline to exercise supplemental jurisdiction over a claim if all original jurisdiction claims have been dismissed).

### III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: March 30, 2011                        s/ Mona K. Majzoub_____
                                                         MONA K. MAJZOUB
                                                         UNITED STATES MAGISTRATE JUDGE

## <u>PROOF OF SERVICE</u>

I hereby certify that a copy of this Report and Recommendation was served upon Kumal Burton and Counsel of Record on this date.

Dated: March 30, 2011                        s/ Lisa C. Bartlett_____
                                                         Case Manager

9